UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| HOTELS UNION SQUARE MEZZ 1 LLC, | ) | Case No. 10-10971 (KJC) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| UNION SQUARE REAL HOLDING CORPORATION, | ) | Adv. Proc. No. _____ (KJC) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOTELS UNION SQUARE MEZZ 1 LLC, HERBERT L. MILLER, JR., JAY EISNER, and KURT HACKETT, | ) | |
| | ) | |
| Defendants. | ) | |

## **VERIFIED COMPLAINT**

Plaintiff Union Square Real Holding Corporation ("USRHC"), by its attorneys Paul, Hastings, Janofsky & Walker LLP and Morris, Nichols, Arsht & Tunnell LLP, for its complaint, alleges as follows:

1. This is an adversary proceeding to enjoin the above captioned debtor, Hotels Union Square Mezz 1 LLC (the "Debtor"), the individuals purporting to act on its behalf, namely, defendants Herbert L. Miller, Jr. ("Miller"), Jay Eisner ("Eisner") and Kurt Hackett ("Hackett" and together with Miller and Eisner, the "Individual Defendants"), and those acting in concert with them, from filing an unauthorized voluntary bankruptcy petition on behalf of the Debtor's subsidiary, Hotels Union Square LLC (the "Hotel Owner").

2. The Hotel Owner is the owner of W Hotel located at 201 Park Avenue South, New York, New York (the "W Union Square Hotel").

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this adversary proceeding pursuant 28 U.S.C. §§157 and 1334. The above-captioned bankruptcy case is currently pending before this Court pursuant to the standing order of reference adopted by the United States District Court for the District of Delaware.

4. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157.

## PARTIES

6. USRHC is a Cayman Islands exempted company with limited liability having an address c/o Istithmar World, PO Box 17000, Dubai, UAE. USRHC is an indirect wholly owned subsidiary of Istithmar Building FZE ("Istithmar") which is a Jebel Free Zone establishment organized under Emirate of Dubai Law 9 of 1992, having a registered address c/o Istithmar World, PO Box 17000, Dubai, UAE.

7. The Debtor is a Delaware limited liability company with its principal place of business at Cira Center, 2929 Arch Street, Philadelphia, Pennsylvania 19104 and the subject of the above captioned bankruptcy case commenced on March 23, 2010 by the filing of an unauthorized voluntary petition (the "Petition") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

8. Upon information and belief, the Individual Defendants are officers and/or principals LEM Capital LLC ("LEM") which, among other things, provides mezzanine financing for owners of real estate. The Individual Defendants purport to be officers and, upon information and belief, directors of the Debtor. Miller signed the Petition as an "Authorized Person" of the Debtor.

***The Acquisition and Financing of the W Union Square Hotel***

9. In or about October 2006 the Hotel Owner, then an indirect subsidiary of Istithmar, acquired the W Union Square Hotel for approximately $285 million.

10. The acquisition of the W Union Square Hotel was financed by a first mortgage loan in the amount of $115 million, three tranches of so-called mezzanine debt aggregating approximately $117 million, and an equity investment of approximately $53 million, utilizing a stack of bankruptcy remote, single-purpose entities.

11. The owner of the sole membership interest in the Hotel Owner, the Debtor, formerly known as Istithmar Hotels Union Square Mezz 1 LLC and then an indirect subsidiary of Istithmar, borrowed $60 million (the "Mezz 1 Loan") from Column Financial, Inc. ("Column") on a non-recourse basis secured by a pledge of its membership interest in the Hotel Owner.

12. Column thereafter assigned all of its interest in the Mezz 1 Loan to DekaBank Deutsche Girozentrale ("DekaBank").

13. Simultaneously with the consummation of the Mezz 1 Loan to the Debtor, the owner of the sole membership interest of the Debtor, Hotels Union Square Mezz 2 LLC, formerly known as Istithmar Hotels Union Square Mezz 2 LLC (the "Mezz 2 Borrower") and

3

then an indirect subsidiary of Istithmar, borrowed $37 million (the "Mezz 2 Loan") from Column on a non-recourse basis secured by a pledge of the sole membership interest of the Debtor.

14. Column thereafter assigned all of its interest in the Mezz 2 Loan to Sandelman Partners CRE CDO I, Ltd., which thereafter assigned all of its interest in the Mezz 2 Loan to Sandelman Partners Multi-Strategy Master Fund, Ltd. ("Sandelman").

15. On or about March 9, 2010, in order to protect Istithmar's approximately $53 million investment in the W Union Square Hotel, USRHC acquired all of Sandelman's interest in the $37 million Mezz 2 Loan in consideration for a payment of $3.6 million.

16. USRHC is the current owner of the Mezz 2 Loan.

17. Simultaneously with the consummation of the Mezz 1 Loan to the Debtor and the Mezz 2 Loan to the Mezz 2 Borrower, the owner of the sole membership interest in the Mezz 2 Borrower, Hotels Union Square Mezz 3 LLC, formerly known as Istithmar Hotels Union Square Mezz 3 LLC (the "Mezz 3 Borrower") and then an indirect subsidiary of Istithmar, borrowed $20 million (the "Mezz 3 Loan") from Column on a non-recourse basis secured by a pledge of the sole membership interest of the Mezz 2 Borrower.

18. Column thereafter assigned all of its interest in the Mezz 3 Loan to LEM 2Q, LLC and LEM 2P, LLC, which, upon information and belief, thereafter assigned all of its interest in the Mezz 3 Loan to its affiliate, 201 Park Avenue South PEH L.L.C. (the "Mezz 3 Lender").

19. Upon information and belief, the Mezz 3 Lender is an affiliate of LEM.

*The Mezzanine Loan Defaults and Mezzanine Lenders' Exercise of Remedies*

20. In October 2009, after the occurrence of payment defaults under the terms of the Mezz 1 Loan, the Mezz 2 Loan and the Mezz 3 Loan, the Mezz 3 Lender foreclosed on the

collateral securing the Mezz 3 Loan and acquired the sole membership interest of the Mezz 2 Borrower.

21. As a result, LEM assumed control of the Mezz 2 Borrower, as well as the Mezz 1 Borrower and the Hotel Owner, each of which was theretofore indirectly owned and controlled by Istithmar.

22. As a result of the ongoing payment default under the terms of the Mezz 1 Loan, on or about January 21, 2010 DekaBank gave notice of its intended disposition of the collateral securing the Mezz 1 Loan, namely, the sole membership interest in the Hotel Owner.

23. The foreclosure sale for the membership interest in the Hotel Owner was scheduled to occur on March 24, 2010.

24. In the weeks leading up to March 23, 2010, the date of the filing of the Petition, LEM, through one or more of the Individual Defendants, engaged in a series of failed attempts to extort money out of DekaBank and Istithmar, in exchange for LEM's agreement not to cause the voluntary bankruptcy filings by the Mezz 2 Borrower, the Mezz 1 Borrower or the Hotel Owner.

25. On March 22, 2010, USRHC exercised its voting rights as pledgee under the terms of the pledge and security agreement securing the Mezz 2 Loan, to (i) remove all of the officers and directors of the Debtor and to appoint its designees as directors of the Debtor and (ii) rescind any prior resolutions adopted by the Mezz 2 Borrower or the officers and directors of the Debtor or the Hotel Owner to file any voluntary bankruptcy cases on behalf of either the Debtor or its subsidiary, the Hotel Owner.

26. These actions were taken in response to threats by LEM and its representatives that, unless LEM was paid off in some fashion, and despite its undisputed

5

substantial negative equity as the beneficial owner of the Mezz 3 Loan and the Mezz 2 Borrower, LEM would cause bankruptcy cases to be filed on behalf of both the Debtor and the Hotel Owner.

27. Thereafter, in light of the ongoing payment default under the terms of the Mezz 2 Loan, on March 23, 2010, USRHC gave notice of its intended disposition on April 1, 2010 of the collateral securing the Mezz 2 Loan, namely, the sole membership interest in the Debtor.

*The Unauthorized Filing of the Petition and Threat of an Unauthorized Filing of a Bankruptcy Petition on behalf of the Hotel Owner*

28. After LEM's efforts to sell its cooperation and agreement not to file bankruptcy petitions on behalf of the Debtor or the Hotel Owner failed, and despite (i) its receipt of prior written notice that its control of the Debtor and the Hotel Owner had been terminated by USRHC's exercise of pledged voting rights with respect to the Debtor's membership interests and (ii) its undisputed substantial negative equity in the Mezz 3 Loan, on March 23, 2010, Miller signed the Petition and LEM carried through on its threat to cause the filing of the Petition.

29. Upon information and belief, LEM caused the Petition to be filed for the sole or primary purpose of inflicting economic harm on Istithmar and DekaBank.

30. The DekaBank foreclosure sale was cancelled as a result of the automatic stay triggered by the filing of the Petition by the Debtor.

31. The USRHC foreclosure sale was cancelled as a result of the automatic stay triggered by the filing on March 25, 2010 of the voluntary petition under chapter 11 of the Bankruptcy Code by the Mezz 2 Borrower.

32. Upon information and belief, the revenues being generated by the W Union Square Hotel are currently more than sufficient to pay its current operating expenses and debt service obligations on the first mortgage, which is not currently in default.

33. In light of the willingness on the part of LEM and the Individual Defendants to totally disregard their lack of authority to do so and to engage in an unauthorized filing of the Petition, undeterred by actual notice to them and their counsel of their lack of authority, USRHC has every reason to believe that LEM, the Individual Defendants and those acting in concert with them will not stop there and will carry through with their threat to file an unauthorized voluntary chapter 11 petition on behalf of the Hotel Owner.

## COUNT I: DECLARATORY JUDGMENT

34. USRHC repeats and restates the allegations set forth in the foregoing paragraphs of this complaint as if set forth fully herein.

35. A substantial and actual controversy exists between the USRHC and Defendants as to whether: (1) the Debtor, the Individual Defendants and/or any person acting on behalf of LEM has authority to cause the Hotel Owner to file a bankruptcy petition; (2) assuming the Debtor has any such authority, the Debtor's act of causing the Hotel Owner to file a bankruptcy petition would constitute a use of property of the Debtor's estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code that would require approval of this Court after notice and a hearing to parties-in-interest; and (3) the filing of a bankruptcy petition by or on behalf of the Hotel Owner would be in bad faith because it would fail to serve any valid bankruptcy purpose or would be an improper litigation tactic. Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. § 105(a), this Court has the power to declare and adjudicate the rights and obligations of the parties hereto and to grant such other and further relief as may be necessary to enforce such rights and obligations relevant to this dispute.

## COUNT II: INJUNCTIVE RELIEF

36. USRHC repeats and restates the allegations set forth in the foregoing paragraphs of this complaint as if set forth fully herein.

37. The threats to cause the Hotel Owner to file a bankruptcy petition, an act that would be unauthorized and/or in bad faith, are wrongful and contrary to applicable contracts and law.

38. These actions risk immediate and irreparable harm to USRHC for which it has no adequate remedy at law. Upon information and belief, were the Hotel Owner to become the subject of a bankruptcy case, the W Union Square Hotel would suffer a profound loss of reputation, would lose substantial future bookings and the ability to obtain and maintain trade credit, would face acceleration of the $115 million first mortgage loan and the consequent need to refinance the first mortgage in an exceedingly tight credit market, on what would inevitably be more onerous terms than the terms of the existing loan, and be forced to pay the substantial costs and fees associated with such a loan.

39. Unless the Debtor, the Individual Defendants and those acting in concert with them are temporarily restrained and preliminarily and permanently enjoined from causing a voluntary chapter 11 petition to be filed on behalf of the Hotel Owner, USRHC will suffer irreparable injury with respect to its interest in the $37 million Mezz 2 Loan and as the pledgee of the sole membership interest in the Debtor.

40. Pursuant to 11 U.S.C. § 105(a) and Rule 65 of the Federal Rules of Bankruptcy Procedure, this Court has the power to enter orders preliminarily and permanently enjoining the Debtor, the Individual Defendants and anyone acting in concert with them from acting under improper color of authority to cause the Hotel Owner to file a bankruptcy petition.

WHEREFORE, USRHC respectfully requests that this Court:

8

a. Consider this complaint on an expedited basis and award USRHC the interim and final relief requested after an expedited hearing on the issues presented;

b. Temporarily restrain and preliminarily and permanently enjoin the Debtor, the Individual Defendants and those acting in concert with them from filing a voluntary bankruptcy petition on behalf of the Hotel Owner;

c. Enter a final order declaring that: (1) the Debtor, the Individual Defendants and/or any person acting on behalf of LEM has no authority to cause the Hotel Owner to file a bankruptcy petition; (2) assuming the Debtor has any such authority, the Debtor's act of causing the Hotel Owner to file a bankruptcy petition would constitute a use of property of the Debtor's estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code that would require approval of this Court after notice and a hearing to parties-in-interest; and (3) the filing of a bankruptcy petition by or on behalf of the Hotel Owner would be in bad faith because it would fail to serve any valid bankruptcy purpose or would be an improper litigation tactic.

d. Awarding the costs and disbursements of this adversary proceeding; and

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

e. Granting such other and further relief as to the Court may seem just and proper.

Dated: Wilmington, Delaware
March 31, 2010

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Gregory W. Werkheiser
Robert J. Dehney (No. 3578)
Gregory W. Werkheiser (No. 3553)
1201 North Market Street, 18th Floor
Wilmington, DE 19899-1347
(302) 658-9200

-and-

Harvey A. Strickon
Jodi A. Kleinick
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
(212) 318-6000

*Attorneys for
Plaintiff Union Square Real Holding Corporation*

3480612.1

## VERIFICATION

I, Mark Bennett Troy, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

I am a director of plaintiff Union Square Real Holding Corporation. I have read the foregoing complaint and state that it is true to my own knowledge, except as to matters alleged upon information and belief, and as to those matters I believe it to be true.

Executed on March 31, 2010 in New York, New York.

_____
Mark Bennett Troy